# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PROPERTY CONSTRUCTION COMPANY, *Plaintiff/Counter-Defendant*, v. SPRENGER LANG FOUNDATION, *et al.*, *Defendants/Counter-Plaintiffs*. | Civil Action No. 09-01232 (CKK) |

## MEMORANDUM OPINION
(March 8, 2011)

This action involves a relatively straightforward contract dispute about construction services. Plaintiff/Counter-Defendant American Property Construction Company ("APCC") commenced suit against Defendants/Counter-Plaintiffs Paul Sprenger ("Sprenger"), Jane Lang ("Lang"), and the Sprenger Lang Foundation (collectively, "Defendants"), asserting claims for breach of express and implied contract based upon Defendants' alleged failure to remit payment for construction services provided by APCC. Through this action, APCC seeks to recover monetary damages in the amount of $339,727.50, exclusive of interest, as recompense for services provided. Presently before the Court is Sprenger and Lang's [37] Motion for Partial Summary Judgment,[1] which is directed towards challenging a discrete component of APCC's breach of contract claims—namely, a so-called "contingency" line item in the amount of $85,830. Contending that there was no "meeting of the minds" as to the "contingency" line item, Sprenger and Lang assert that summary judgment should be entered in their favor on this limited

---

[1] The Sprenger Lang Foundation does not join in the motion.

issue. Based upon the parties' submissions, the attachments thereto, the relevant authorities, and the record as a whole, the Court concludes that there remains a genuine dispute as to the meaning that the parties' attached to the "contingency" line item and, accordingly, Sprenger and Lang's [37] Motion for Partial Summary Judgment shall be DENIED.[2]

## I. BACKGROUND

APCC commenced this action against Defendants on July 2, 2009, asserting claims for breach of express and implied contract. *See* Compl., Docket No. [1]. From APCC's perspective, this action is a "straightforward collection case." Pl.'s Opp'n at 1. As set forth in the Complaint, APCC alleges that it was engaged by Defendants to provide general contracting services on an office building located at 1614 20th Street, N.W., Washington, D.C. 20009 (the "Property"). APCC contends that, despite satisfactorily performing the work as agreed, Defendants have failed to make full payment for services rendered. *See generally* Compl. Through the instant action, APCC seeks monetary damages in the amount of $339,727.50, exclusive of interest, a sum that accounts for a so-called "contingency" line item in the amount of $85,830. The nature of the "contingency" line item, and whether APCC may claim an entitlement thereto, is the subject of the present Motion for Partial Summary Judgment.[3]

---

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. by Jane Lang and Paul Sprenger ("Indiv. Defs.' Mem."), Docket No. [37]; Stmt. of Material Facts Not in Dispute ("Indiv. Defs.' Stmt."), Docket No. [37]; Aff. of Jane Lang ("Lang Decl."), Docket No. [37-1]; Mem. in Opp'n to the Mot. for Partial Summ. J. of Jane Lang and Paul Sprenger ("Pl.'s Opp'n"), Docket No. [40]; Pl.'s Opp'n at 2-7 ("Pl.'s Stmt."); Decl. of Allan Sherman ("Sherman Decl."), Docket No. [40-2]; Defs.' Reply to Pl.'s Opp'n to Mot. for Partial Summ. J. ("Indiv. Defs.' Reply"), Docket No. [44].

[3] While the parties sharply dispute APCC's ultimate entitlement to the "contingency" amount, there is surprisingly little disagreement as to the relevant facts. Unless otherwise

It is undisputed that the parties never entered into a formal, written agreement governing the terms and conditions of the work to be performed by APCC.[4]  Indiv. Defs.' Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.  Regardless, APCC performed construction work at the Property over an extended period of time and, prior to commencing that work, prepared a written estimate as to the anticipated costs and expenses.  Indiv. Defs.' Stmt. ¶ 5; Pl.'s Stmt. ¶ 5.  The "initial budgeting spreadsheet," as it is characterized by APCC, identifies the bid-date as November 2, 2006 and places the total estimated cost for the contemplated construction services at $2,472,548.  Pl.'s Stmt. Ex. F at APC-00030.[5]  Following three pages of itemized expenditures, the written estimate divides the total estimated cost into eight categories:

| Description | Estimate |
|---|---|
| Labor | $440,900 |
| Material | $173,422 |

---

indicated, the narrative that follows rests on undisputed facts or those facts as to which there can be no genuine dispute, viewing the evidence in the light most favorable to APCC as the non-movant.

[4] While APCC at one point created a proposed contract, it never proceeded beyond draft form.  Indiv. Defs.' Stmt. ¶ 2 & Ex. A; Pl.'s Stmt. ¶ 2.  The draft agreement sheds no light on the discrete issue presently before the Court.

[5] Although they do not dispute either that APCC prepared a written estimate in connection with the contemplated work or that the written estimate included the specific "contingency" line item at issue, Indiv. Defs.' Stmt. ¶ 5, Sprenger and Lang neglected to include the written estimate as an exhibit to their moving papers.  APCC, however, included with its opposition papers what it contends is the "initial budgeting spreadsheet."  Pl.'s Stmt. ¶ 3 & Ex. F.  In reply, Sprenger and Lang never suggest that the proffered spreadsheet is anything other than the written estimate spoken of by both parties, *see generally* Indiv. Defs.' Reply, and the Court assumes this to be the case for purposes of the present motion.  In any event, viewing the evidence in the light most favorable to APCC as the non-movant, it is justifiable to infer that the exhibit is what it is claimed to be—namely, the written estimate exchanged between the parties prior to the commencement of the contemplated services.

| Subcontract | $1,386,715 |
| --- | --- |
| Equipment | $26,950 |
| Other | $178,668 |
| Overhead | $88,266 |
| Profit | $91,797 |
| Contingency | $85,830 |
| *Total* | *$2,472,548* |

Pl.'s Stmt. Ex. F at APC-00030. As set forth in the written estimate, the final three categories—overhead, profit, and contingency—are segregated from the remaining five. *Id.* The "contingency" line item, estimated at $85,830, is the sole focus of the present motion.

Despite the absence of a formal contract governing the parties' relationship, APCC performed construction work at the Property and, during the course of its work, submitted thirteen applications for payment. Indiv. Defs.' Stmt. ¶ 3; Pl.'s Stmt. ¶ 3. All thirteen applications, submitted more or less on a monthly basis over the period of approximately one year and seven months extending from December 31, 2006 through August 6, 2008, consistently identified the "scheduled value" for the "contingency" line item as $85,830. Indiv. Defs.' Stmt. ¶ 3; Pl.'s Stmt. ¶ 3 & Ex. G at APC-00145 (Dec. 31, 2006 Appl.), APC-00126 (Jan. 31, 2007 Appl.), APC-00121 (Feb. 28, 2007 Appl.), APC-00111 (Mar. 31, 2007 Appl.), APC-00102 (May 31, 2007 Appl.), APC-00092 (June 30, 2007 Appl.), APC-00077 (Aug. 31, 2007 Appl.), APC-00067 (Sept. 30, 2007 Appl.), APC-00060 (Oct. 31, 2007 Appl.), APC-00052 (Feb. 18, 2008 Appl.), APC-00043 (Apr. 28, 2008 Appl.), APC-00036 (June 2, 2008 Appl.), APC-00308 (Aug. 6, 2008 Appl.). While the "contingency" line item was consistently identified over time, it is undisputed that APCC did not actually seek payment for the "contingency" amount until it

submitted its final two applications for payment: an application for payment dated June 2, 2008 sought payment for $40,000 of the "contingency;" and an application for payment dated August 6, 2008 sought payment for the remaining $45,830. Indiv. Defs.' Stmt. ¶ 3; Pl.'s Stmt. ¶¶ 3, 10 & Ex. G at APC-00036 (June 2, 2008 Appl.), APC-00308 (Aug. 6, 2008 Appl.). Sprenger and Lang never paid the designated amounts. Indiv. Defs.' Stmt. ¶ 10; Pl.'s Stmt. ¶ 10.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

5

Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

Under District of Columbia law,[6] the party asserting the existence of an enforceable contract bears the burden of proving that there has been a "meeting of the minds," or mutual assent, as to all material terms. *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999).

---

[6] Both parties assume that District of Columbia law applies to the claims at issue, and the Court need not question the parties' assumption. *Himes v. Medstar-Georgetown Univ. Med. Ctr.*, __ F. Supp. 2d __, 2010 WL 4879438, at *4 n.3 (D.D.C. Dec. 1, 2010).

Without a "meeting of the minds" as to all material terms, there can be no enforceable contract. *Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000) (citing *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)). While mutual assent is "most clearly evidenced by the terms of a signed written agreement," a signed agreement is not indispensable, *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 252 (D.C. 2005) (internal quotation marks omitted); proof of a meeting of the minds may also be found "in the parties' actions at the time of contract formation," *Ekedahl*, 183 F.3d at 858. Indeed, "[w]here an ambiguity is present, the intent and understanding of the parties is of critical importance," which entails "a probing inquiry into the understanding of each party to the alleged contract regarding its meaning and effect." *Howard Univ. v. Lacy*, 828 A.2d 733, 737 (D.C. 2003). Often this requires resort to evidence concerning the circumstances surrounding the making of the contract, including preliminary negotiations and discussions, customary practices of which either party knows or has reason to know, and the course of conduct of the parties under the contract. *In re Bailey*, 883 A.2d 106, 118 (D.C. 2005). In the instant case, Sprenger and Lang maintain that there was no "meeting of the minds" as to the "contingency" line item. The Court concludes that genuine factual disputes preclude a definitive finding one way or the other based on the skeletal record created by the parties and shall therefore DENY Sprenger and Lang's [37] Motion for Partial Summary Judgment.

Before reaching the contested issues, it is important to emphasize what is not genuinely in dispute. Although never fully acknowledged in the parties' briefing, both sides clearly shared an understanding as to the underlying *purpose* of the "contingency" line item. That is, both parties understood that the $85,830 amount, or at least some portion thereof, would be used to cover

7

unanticipated costs incurred by APCC in the course of performing the services for which it was engaged. Indiv. Defs.' Stmt. ¶ 5; Pl.'s Stmt. ¶ 7. Allan Sherman ("Sherman"), the President and Founding Principal of APCC and the Project Manager for the construction work at the Property, submits his view that a "contingency" is an "industry standard" device designed to cover unanticipated costs, such as changes and modifications that arise during the course of construction. Sherman Decl. ¶¶ 21-22, 30. In this way, the "contingency" amount serves as a cushion to absorb unanticipated costs, and allows the parties to rely on the predetermined and budgeted contingency amount in lieu of issuing updated invoices or "change orders." *Id.* ¶¶ 22-23. Sprenger and Lang's purported understanding of the "contingency" amount—*i.e.*, that it was a means to account for "unexpected expenses that might occur during the course of the project," Indiv. Defs.' Stmt. ¶ 5 (citing Dep. of Jane Lang ("Lang Dep."), Docket No. [37-7], at 155-57)—is not materially different. In short, everyone understood the function of the "contingency" line item.[7] What is less clear is whether the parties intended to require APCC to document and justify any unanticipated costs and impute them to the $85,830 amount, and whether the parties intended the unused balance, if any, to inure to the benefit of APCC or, alternatively, to Sprenger and Lang. Unfortunately, the record created by the parties sheds little light on either question.

There is no doubt that, in arguing the merits of the present motion, the parties have put

---

[7] For this reason, it is somewhat perplexing that Sprenger and Lang so forcefully argue that the "plain, common-sense definition" of the term "contingency" requires summary judgment in their favor. Indiv. Defs.' Reply at 2. The argument misses the mark for the simple reason that nobody disputes that the expenses themselves were "contingent," in that they were uncertain to be incurred; but that does not answer the question of whether the parties intended APCC to justify and account for such expenses, in the event they were incurred, or the question of which party was entitled to the balance in the further contingency that the full $85,830 was not depleted in covering unanticipated costs.

8

forward conflicting interpretations of the "contingency" amount and how it would be used during the course of the parties' relationship. On the one hand, APCC contends that the "contingency" amount operates more or less like a preset discretionary fund designed to afford the contractor with some flexibility in absorbing the unanticipated but inevitable costs encountered in the course of any given construction project without cutting into its agreed-upon profit. Sherman Decl. ¶¶ 23-24. Consistent with this view, APCC readily concedes that it has never attempted to itemize the makeup of the $85,830 "contingency" amount, explaining that "contingency by definition . . . does not cover any specific item." *Id.* ¶ 24. Viewed from a slightly different perspective, APCC construes the "contingency" line item as akin to a form of profit, with the principal difference being that there is a presumption that monies allocated for "contingencies" will be used to cover unexpected costs, but that any unused balance nevertheless inures to the contractor's benefit. On the other hand, while they do not dispute that the "contingency" line item was designed to cover unexpected expenses or that those expenses were initially projected to be $85,830, Sprenger and Lang nevertheless maintain that there was no agreement to "pay any 'contingency' amount without receiving a full explanation of same at the time the 'contingency' or unforeseen expense arose." Lang Decl. ¶ 4. In other words, so far as the Court can tell, Sprenger and Lang assert that the "contingency" amount would be set aside as a projection of costs unforeseen at the time of the estimate, but that APCC would have to specifically account for and deduct those costs from the "contingency" amount as they arose, and that any remaining balance would inure to their benefit.[8] Indiv. Defs.' Reply at 2.

---

[8] Whether APCC actually made an effort to explain which expenses were being covered by the "contingency" amount is disputed. On the one hand, Lang avers, with no further explanation, that APCC never identified any particular item that would be attributed to the

While neither interpretation is facially implausible, the problem is that there is virtually no evidence in the record as to what the parties' understandings actually were at the time of contracting and whether those understandings were reasonable. These gaps in the record are fatal for Sprenger and Lang's Motion for Partial Summary Judgment because the question of whether there has been a "meeting of the minds" must be approached with an eye towards the contracting parties' understanding of their agreement "at the time the contract was made," *Sun Secured Fin. LLC v. ARCS Commercial Mortg. Co. LP*, 730 F. Supp. 2d 132, 137 (D.D.C. 2010), and while the parties' subjective intent may sometimes be relevant in determining whether there has been mutual assent to all material terms, the inquiry nevertheless turns on how a reasonable person in the position of the parties would have understood the agreement, *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 299 (D.C. 2006) (internal quotation marks omitted).

Relying exclusively on Lang's deposition testimony, Sprenger and Lang contend that "it was [] Lang's understanding that the reference [to a "contingency" in APCC's written estimate] was to unexpected expenses that might occur during the course of the project, and that any discussion of such charges would not occur until such time as such expenses were incurred." Indiv. Defs.' Stmt. ¶ 5 (citing Lang Dep. at 155-57). The cited testimony, however, does not clearly evidence Lang's understanding at the time APCC was engaged to perform construction

---

"contingency" amount. Lang Decl. ¶ 3. On the other hand, Sherman maintains that he frequently informed Sprenger and Lang that some unspecified universe of expenses, otherwise unbilled, were being covered by the "contingency" amount, and that APCC sometimes performed so-called "change order" requests free of charge as a courtesy and in reliance on the existence of the agreed-upon "contingency" amount. Sherman Decl. ¶ 27. Neither party submits any evidence in support of their positions beyond these dueling and rather generalized declarations. On this record, the Court cannot resolve the dispute, which, in any event, is largely immaterial because APCC has taken the position in this litigation that it was under no obligation to document or explain the expenses covered by the "contingency" amount.

services. In fact, it is entirely equivocal:

> **Q.** Let me move on to this last number, the contingency number, $85,000 [sic]. Why has that been deducted from the contract?
>
> **A.** I — My recollection is not clear on this, but I believe — there was an allowance that — I really can't answer that clearly right now. I just — I just don't remember. But there was an allowance taken and — for contingencies that was [sic] unexplained.
>
> . . . .
>
> In [APCC's] budget, there was a contingency or contingencies — I don't remember how it was described — and that my recollection is it was unexplained and — that portion of it.
>
> **Q.** Okay. Did you ever dispute the contingency amount . . . .?
>
> **A.** Well, a contingency at the beginning in a budget is just a contingency. It's not something to dispute.
>
> **Q.** Did you ever ask for clarification on the contingency, on what it was [before the work started]?
>
> . . . .
>
> **A.** Well, my understanding of a contingency is just that it's sort of like a, you know, possible — to cover things that you don't expect or that you don't know about.
>
> . . . .
>
> **Q.** Okay. Kind of like the unforeseeable?
>
> **A.** That's my understanding.

Lang Dep. at 155-57. Simply put, the testimony relied upon by Sprenger and Lang sheds no light on what Lang's understanding of the "contingency" line item was at the time of contracting, apart from the fact that she understood that it was intended to cover unanticipated expenses. The testimony offers nothing in the way of answering whether the parties intended to require APCC to specifically document and justify any unanticipated costs and impute them to the $85,830

11

amount, and whether the parties intended the unused balance, if any, to inure to the benefit of APCC or, alternatively, to Sprenger and Lang.[9]

Even assuming, *arguendo*, that there was competent evidence in the record establishing with some meaningful measure of clarity what Lang's subjective understanding of the "contingency" line item was at the time APCC was engaged, at least one further wrinkle would still preclude summary judgment. Specifically, the parties dispute whether Lang was the sole representative of the owners of the Property with respect to the construction project. Indiv. Defs.' Stmt. ¶ 4; Pl.'s Stmt. ¶ 4. While Lang may have been, and in truth likely was, the primary point-of-contact between the owners and APCC, Lang's *ipse dixit* that she represented the owners in "substantially all dealings," Lang Decl. ¶ 1, is belied by evidence suggesting that others, including Sprenger and employees of the Sprenger Lang Foundation, actively interacted

---

[9] To the extent Sprenger and Lang intended to rely upon Lang's cursory five-paragraph declaration as additional evidence in support of their contention that their contemporaneous understanding was that APCC was required to document and justify any unanticipated costs, they failed to identify it as such in their Statement of Material Facts Not in Dispute. *See* Indiv. Defs.' Stmt. ¶ 5; *see also* Local Rule LCvR 7(h)(1) (providing that parties must include specific "references to parts of the record relied on to support" their factual contentions). Regardless, while Lang asserts in her declaration that "[a]t no time did [she and Sprenger] enter into any oral agreement with [APCC] . . . [to] pay any 'contingency' without receiving a full explanation of the same at the time the 'contingency' or unforeseen expense arose," Lang Decl. ¶ 4, that assertion is entirely conclusory and devoid of any factual basis and, as such, is insufficient to warrant summary judgment in Sprenger and Lang's favor. *Cf. Ass'n of Flight Attendants-CWA*, 564 F.3d at 465-66 (conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment). Furthermore, while not so clearly inconsistent with Lang's prior deposition testimony such that would warrant disregarding it altogether as a "sham affidavit," *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160-61 (D.D.C. 2008), *aff'd*, 630 F.3d 217 (D.C. Cir. 2011), Lang's declaration makes no attempt to explain why her recollection of the "contingency" line item has improved in the time since she sat for her deposition. Without some credible explanation for the change, the Court cannot credit Lang's recent declaration to the exclusion of her prior deposition testimony.

with APCC and its employees throughout the course of the construction project. Indiv. Defs.' Stmt. ¶ 4; Pl.'s Stmt. ¶ 4 & Ex. D at SL0000997, SL0001016, SL0001064, SL0001068, SL0001236, SL0001360; Lang Dep. at 34-35; Sherman Decl. ¶¶ 10, 19. The extent and scope of those interactions are not established in the record. It may very well be the case that only Lang wielded contracting authority, but the question simply cannot be answered as a matter of law based on the present record.

In the final analysis, the record in this case has been so poorly developed by the parties that the Court cannot say, one way or the other, whether there was a "meeting of the minds" under these circumstances. Where, as here, there is no unambiguous writing governing the parties' relationship, the law requires a "probing inquiry" into each party's understanding, *Howard Univ.*, 828 A.2d at 737, but the parties have failed to come forward with the sort of raw factual material or cogent argument that would permit such an inquiry. Simply by way of example, neither party even bothers to explain how the $85,830 figure, which comprises roughly 3.5% of the overall estimated cost of the services to be provided by APCC, came into being. Similarly, even though the thirteen applications for payment submitted by APCC consistently identified the $85,830 amount as part of the "original contract sum," Pl.'s Stmt. Ex. G, and even though the "contingency" line item appears in the initial written estimate alongside the line items for "profit" and "overhead," Pl.'s Stmt. Ex. F at APC-00030, two items that typically do not require specific itemization, Sprenger and Lang never really offer any explanation as to why they may have reasonably understood the "contingency" to be anything other than what APCC claims it to be. At the same time, while APCC suggests in passing that the inclusion of a "contingency" amount in agreements of this type is "industry standard," Sherman Decl. ¶ 30, it adduces no

13

evidence in support of that claim or even attempts to explain how the "contingency" amount in this case aligns with the purported industry standard.[10] This is potentially significant because, in ascertaining the parties' intent, resort is often made to customary practices of which either party knows or has reason to know. *In re Bailey*, 883 A.2d at 118. The Court shall not belabor the point; it has taken the parties' arguments as far as the record will allow, although that is decidedly not very far. Based on the present record, Sprenger and Lang have failed to establish their entitlement to judgment as a matter of law.[11]

---

[10] Based on the Court's own review of the case law, APCC's interpretation appears to have some merit. *See In re Stone & Webster, Inc.*, 279 B.R. 748, 801 (Bankr. D. Del. 2002) ("[I]t is proper to include in the damages award reasonable contingency amounts that are part of the construction estimate;" although they "cannot be precisely calculated," they are "known unknown[s]."); *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 205 (La. 2008) (upholding jury award for building damages that included an allowance for unspecified "contingency costs," where plaintiff's expert testified that they were "real, foreseeable, but unidentified costs"); *see also* Steven G.M. Stein, *Construction Law*, § 3A.08 (LexisNexis Matthew Bender 2010) ("When construction is performed on a lump-sum basis, the contractor usually includes some contingency funds in his price for delays, reperformance of defective work, losses not compensated by insurance . . ., and other such events. If these contingencies do not occur, they result is additional profit to the contractor, and appropriately so, because he undertook the risks associated with these matters."). Should this question arise again at trial, the parties should be prepared to support their respective positions with citations to relevant case law, preferably from courts within this Circuit.

[11] Although afforded sparse attention in the parties' papers, and left entirely unaddressed in Sprenger and Lang's reply papers, *see generally* Indiv. Defs.' Reply, the deficiencies in the record identified above similarly preclude judgment as a matter of law to the extent APCC's claims sound in quasi-contract, as the Court cannot say on this record that a reasonable fact-finder could not conclude that the "contingency" amount represents, in part, the valuable services rendered or benefit conferred by APCC to Sprenger and Lang. *See Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010) (identifying the elements of claims for *quantum meruit* and unjust enrichment).

## IV. CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall DENY Sprenger and Lang's [37] Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

Date: March 8, 2011

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge