# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN PROPERTY
CONSTRUCTION COMPANY,

    *Plaintiff/Counter-Defendant*,

v.

SPRENGER LANG FOUNDATION, *et al.*,

    *Defendants/Counter-Plaintiffs*.

Civil Action No. 09-01232 (CKK)

## MEMORANDUM OPINION
(March 9, 2011)

    This action involves a relatively straightforward contract dispute about construction services. Plaintiff/Counter-Defendant American Property Construction Company ("APCC") commenced suit against Defendants/Counter-Plaintiffs Paul Sprenger ("Sprenger"), Jane Lang ("Lang"), and the Sprenger Lang Foundation (the "Foundation") (collectively, "Defendants"), asserting claims for breach of express and implied contract based upon Defendants' alleged failure to remit full payment for construction services provided by APCC. Through this action, APCC seeks to recover monetary damages in the amount of $339,727.50, exclusive of interest, as recompense for services provided. Presently before the Court is the Foundation's [36] Motion for Summary Judgment,[1] wherein the Foundation contends that it is not a party to, or otherwise bound by, any agreement with APCC and is therefore entitled to judgment as a matter of law. Based upon the parties' submissions, the attachments thereto, the relevant authorities, and the record as a whole, the Court concludes that there remains a genuine dispute as to whether the

---

[1] Sprenger and Lang do not join in the motion.

Foundation is a party to the alleged agreement or may otherwise be held liable in connection with APCC's breach of contract claims. Therefore, the Court shall DENY the Foundation's [36] Motion for Summary Judgment.[2]

## I. BACKGROUND

APCC commenced this action against Defendants on July 2, 2009, asserting claims for breach of express and implied contract. *See* Compl., Docket No. [1]. From APCC's perspective, this action is a "straightforward collection case." Pl.'s Opp'n at 1. APCC alleges that it was engaged by Defendants, including the Foundation, to provide general contracting services on an office building located at 1614 20th Street, N.W., Washington, D.C. 20009 (the "Property"). Compl. ¶ 9. APCC contends that, despite satisfactorily performing the agreed-upon work, Defendants have failed to make full payment. *Id.* ¶¶ 10-15. Accordingly, through the instant action, APCC seeks monetary damages in the amount of $339,727.50, exclusive of interest, as recompense for services rendered. *Id.* ¶¶ 14, 18.

The present motion is limited to the narrow question of whether the Foundation is a party to, or otherwise bound by, the alleged agreement with APCC. The Foundation is a trust with a stated mission of supporting the arts, education, and the environment. Def.'s Stmt. ¶ 3; Pl.'s

---

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Mem. of P. & A. in Supp. of Mot. for Summ. J. by the Sprenger Lang Foundation ("Def.'s Mem."), Docket No. [36]; Stmt. of Material Facts Not in Dispute ("Def.'s Stmt."), Docket No. [36]; Aff. of Jane Lang ("Lang Decl."), Docket No. [36-1]; Dep. of Jane Lang ("Lang Dep."), Docket No. [36-3]; Mem. in Opp'n to the Sprenger Lang Foundation's Mot. for Summ. J. ("Pl.'s Opp'n"), Docket No. [39]; Pl.'s Opp'n at 2-4 ("Pl.'s Stmt."); Decl. of Allan Sherman ("Sherman Decl."), Docket No. [39-2]. As of the date of this Memorandum Opinion, the public docket reflects that the Foundation has not filed a reply in support of the present motion, and therefore the representations offered by APCC in its opposition stand uncontradicted.

Stmt. ¶ 3. While never directly addressed by either party, it appears from the record that Sprenger and Lang are the Foundation's sole trustees. Lang Dep. at 15. It is also evident from the record that the Foundation held no formal ownership interest in the Property in the time period relevant to this action, and that the Property was instead jointly held by Sprenger and Lang as individuals.[3] Def.'s Stmt. ¶¶ 2, 4; Pl.'s Stmt. ¶¶ 2, 4. At the same time, the record suggests that the Foundation was an occupant of the Property during the time period relevant to this action. Pl.'s Stmt. Ex. D at SL0000997, SL0001016, SL0001068, SL0001360, SL0001406; Sherman Decl. ¶¶ 8, 16.

It is undisputed that the parties never entered into a formal, written agreement governing the terms and conditions of the work to be performed by APCC, Def.'s Stmt. ¶ 5; Pl.'s Stmt. ¶ 5, something that undeniably complicates determining whether an agreement existed and, if so, precisely who was party to that agreement. That said, the parties did at one point contemplate formalizing their relationship in a written document. On or about July 31, 2006, prior to the commencement of any work at the Property, Allan Sherman ("Sherman"), the President and Founding Principal of APCC and the Project Manager for the construction work performed by APCC, sent a draft agreement to Lang for her review. Def.'s Stmt. Ex. C at APC-00153. The

---

[3] While APCC purports to deny this contention, its denial is half-hearted and, more importantly, unsupported by competent evidence. Indeed, APCC concedes that it "lacks sufficient information to admit or deny [the] allegation," but then proceeds to offer its unsupported and wholly conclusory rejoinder that "it always understood the Property to be owned by all Defendants." Pl.'s Stmt. ¶ 2. While that rejoinder may be relevant in ascertaining APCC's state of mind at the time of contracting, such conclusory assertions, offered without any factual basis, cannot create a genuine dispute as to the *actual* ownership of the Property. In any event, the deed for the Property has been introduced into the record, which identifies Sprenger and Lang as the sole owners and makes no mention whatsoever of the Foundation. Def.'s Stmt. Ex. B. Accordingly, for purposes of the present motion, it cannot genuinely be disputed that the Foundation held no formal ownership interest in the Property.

draft agreement, which was based on a form prepared by the American Institute of Architects, expressly provided that the parties would be APCC, as the "Contractor," and Sprenger and Lang, as the "Owner[s]" of the Property. *Id.* at APC-00156. No mention was made of the Foundation. *Id.* However, APCC contends, and the Foundation never disputes, that subsequent contract negotiations ensued, with the parties ultimately agreeing to proceed with the construction project in accordance with an agreed-upon budget. Def.'s Stmt. ¶ 5; Sherman Decl. ¶ 7. In the end, the proposed agreement never proceeded beyond draft form.[4] Def.'s Stmt. ¶ 5 & Ex. D at 20; Pl.'s Stmt. ¶ 5.

Despite the absence of a formal contract governing the parties' relationship, APCC performed construction work at the Property and, during the course of its work, submitted thirteen applications for payment. All thirteen applications, submitted more or less on a monthly basis over the period of approximately one year and seven months extending from December 31, 2006 through August 6, 2008, were addressed to the Foundation and consistently identified the Foundation as the "Owner" of the Property. Pl.'s Stmt. Ex. G at APC-00144 (Dec. 31, 2006 Appl.), APC-00125 (Jan. 31, 2007 Appl.), APC-00120 (Feb. 28, 2007 Appl.), APC-00110 (Mar. 31, 2007 Appl.), APC-00101 (May 31, 2007 Appl.), APC-00091 (June 30, 2007 Appl.), APC-00076 (Aug. 31, 2007 Appl.), APC-00066 (Sept. 30, 2007 Appl.), APC-00059 (Oct. 31, 2007 Appl.), APC-00051 (Feb. 18, 2008 Appl.), APC-00042 (Apr. 28, 2008 Appl.), APC-00035 (June 2, 2008 Appl.), APC-00307 (Aug. 6, 2008 Appl.). Sherman declares, without contradiction, that the Foundation never suggested that the applications for payment should be directed elsewhere

---

[4] The only explanation ever provided for this development is Sherman's rather unilluminating declaration that Lang "failed/refused to sign." Sherman Decl. ¶ 7.

nor corrected the characterization that it was the "Owner" of the Property. Sherman Decl. ¶ 17. Moreover, APCC has introduced into the record a large swath of correspondence and other documents suggesting that the Foundation and its employees were actively involved in the construction project over an extended period of time. Pl.'s Stmt. Ex. D.

Relying exclusively on Lang's declaration, the Foundation contends that it never made any payments to APCC for the work performed and that, instead, payment originated directly from one of three parties—Sprenger, Lang, or JLPS, LLC, a non-party limited liability company of which Sprenger and Lang are the only members. Def.'s Stmt. ¶¶ 6-7 (citing Lang Decl. ¶ 2). However, APCC has included with its opposition a check issued by the Foundation to APCC in the amount of $2,777.50, apparently as a "50% downpayment per contract on . . . shelves." Pl.'s Stmt. Ex. B. While there appear to be no other checks issued directly by the Foundation to APCC, Sherman declares, with minimal explanation but without contradiction, that Lang expressly represented to him that the Foundation was paying for at least a portion of the renovations. Sherman Decl. ¶¶ 13, 15.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the

relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III.  DISCUSSION

Under District of Columbia law,[5] the party asserting the existence of a contract, regardless of its form,[6] bears the burden of proving the existence of an enforceable agreement. *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005) (citing *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)).  This burden extends to the issue of contract formation, *Novecon Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 564 (D.C. Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000), meaning that the proponent of the agreement must establish that there has been assent to all material terms on both sides of the agreement, *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999).  The instant motion turns on the fundamental and unobjectionable principle that a contract cannot bind a non-party—*i.e.*, someone who has not assented to be bound to its terms.  *Equal Empl. Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Charlton v. Mond*, 987 A.2d 436, 441 (D.C. 2010) ("Non-parties owe no contractual duty to the contracting parties.").  In this case, the Foundation contends that a reasonable fact finder could not find that it was a party to, or

---

[5]  Both parties assume that District of Columbia law applies to the claims at issue, and the Court need not question the parties' assumption. *Himes v. Medstar-Georgetown Univ. Med. Ctr.*, __ F. Supp. 2d __, 2010 WL 4879438, at *4 n.3 (D.D.C. Dec. 1, 2010).

[6]  The Court observes that the Foundation is mistaken in its argument that, given the undisputed absence of a formal, written agreement between the parties, APCC can only recover under a theory of implied contract.  There is a broad category of agreements that are unwritten but nevertheless express—namely, oral agreements.

7

otherwise bound by, any agreement with APCC. The Foundation's argument rests on three bases, none of which warrants judgment as a matter of law in the Foundation's favor. The Court addresses each basis in turn.

First, the Foundation argues most forcefully that it is entitled to judgment as a matter of law because it holds no formal ownership interest in the Property. Def.'s Mem. at 3-4. The argument is entirely misplaced. While it may be reasonable to assume that an owner of real property is more likely than a non-owner to enter into an agreement concerning construction services to be provided with respect to that property, ownership alone is hardly dispositive. Simply put, there is no reason why a non-owner occupant of a given property, such as the Foundation, could not enter into a binding agreement concerning construction services to be provided with respect to that property. Accordingly, the Foundation is not entitled to summary judgment on this basis.

Second, affording the Foundation's papers a generous construction, the Foundation argues that Lang was not representing its interests when engaging or dealing with APCC. Unlike the Foundation's previous argument, this one at least rests on more solid legal footing; if no one was representing the Foundation in the course of contract negotiations, APCC's claims, at least those rooted in breach of an express or implied-in-fact contract (as opposed to quasi-contract), would be on shaky ground. However, it is entirely non-controversial to say that trustees, as agents, may wield actual or apparent authority to bind the trust, as the principal, to enforceable agreements. *See Makins v. District of Columbia*, 277 F.3d 544, 548 (D.C. Cir. 2002) ("Actual authority . . . means that the agent has the power to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him.") (internal

quotation marks omitted); *Dorsky Hodgson & Partners, Inc. v. Nat'l Council of Sr. Citizens*, 766 A.2d 54, 55 (D.C. 2001) ("Apparent authority arises when a principal places an agent in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold.") (internal quotation marks omitted). The problem is that the record in this case has been so poorly developed by the parties that the Court cannot say, one way or the other, whether anyone actually was, or reasonably could have been seen as, representing the Foundation at the time the contract was alleged to have been formed.

In support of its position, the Foundation relies primarily on Lang's declaration, which provides, in conclusory fashion, that "[a]t no time did [she] negotiate, deal with, or pay [APCC] on behalf of [the Foundation]." Lang Decl. ¶ 5. APCC, in turn, counters with its own conclusory denial of the allegation. Sherman Decl. ¶¶ 6, 10. Neither party provides any meaningful factual support for their respective positions, and their conclusory assertions, provided without any concrete basis in the record, offer nothing in the way of resolving the issue. Meanwhile, the record shows the following: Sprenger and Lang are trustees of the Foundation; Lang was involved in the negotiations in question; both Sprenger and Lang made payments to APCC; the Foundation occupies part of the Property at which the services in question were performed; a broad swath of correspondence indicates that Foundation employees were actively involved in the construction project; the thirteen applications for payment submitted by APCC were all addressed to the Foundation; and the Foundation made at least one direct payment in connection with the services provided. Counterbalanced against these considerations are Lang's assertion that she was not representing the Foundation, which is entirely conclusory, the fact that the Foundation held no formal ownership interest in the Property, which as previously explained is

9

not necessarily inconsistent with a finding that the Foundation is a party to the agreement, and the fact that the draft agreement did not expressly identify the Foundation as a prospective party. On this final point, while the fact that the draft agreement did not identify the Foundation as a prospective party may be some evidence that the parties, in their subsequent negotiations, did not intend for the Foundation to be bound by the agreement ultimately reached, it is not sufficient to warrant summary judgment in the Foundation's favor in the face of all the countervailing evidence in the record. This is especially true after taking into consideration that all thirteen applications for payment, prepared later in time and over the course of nearly two years, were all directed to the Foundation, suggesting that something may have changed between July 31, 2006, around the time the draft agreement was prepared, and December 31, 2006, when the first application for payment was submitted.[7] Based on this record, the conclusion to be reached is simply inescapable: there is a genuine dispute as to whether the Foundation is a party to, or bound by, the alleged agreement.

Third, and finally, the Foundation avers that it has neither accepted nor benefitted from the services provided by APCC, Def.'s Mem. at 3-4, an argument that appears to be directed more towards APCC's claims to the extent they sound in quasi-contract. It is well-established that, under the rubric of *quantum meruit* and unjust enrichment, "one who orders work done impliedly promises to pay for it," *Chase v. Gilbert*, 499 A.2d 1203, 1208 n.4 (D.C. 1985), and

---

[7] While not altogether clear from the parties' papers, APCC appears to contend only that the thirteen applications for payment are evidence that the Foundation was an original party to the agreement ultimately reached, and not that they are indications that the Foundation ratified the agreement later in time. *See Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 672 (D.C. 1983) ("The principal may ratify the act expressly or impliedly, by conduct inconsistent with any other hypothesis, and once he has done so he is bound by the agent's act *nunc pro tunc*.") (internal citations omitted).

10

"[t]he party who [unjustly] retains the benefit is obliged to make restitution," *Kramer Assocs.*, 888 A.2d at 254. However, because genuine disputes exist as to whether APCC's services were engaged, in all, in part, or not at all on the Foundation's behalf, and whether the Foundation, as an occupant of the building, has benefitted from the services, the Foundation is not entitled to summary judgment on this basis either.

## IV. CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall DENY the Foundation's [36] Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

Date: March 9, 2011

                                                  /s/
                                    **COLLEEN KOLLAR-KOTELLY**
                                    United States District Judge