**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN PROPERTY CONSTRUCTION COMPANY, *Plaintiff/Counter-Defendant*, v. SPRENGER LANG FOUNDATION, *et al.*, *Defendants/Counter-Plaintiffs*. | Civil Action No. 09-01232 (CKK) |

**MEMORANDUM OPINION**
(March 14, 2011)

This action involves a relatively straightforward contract dispute about construction services.  Plaintiff/Counter-Defendant American Property Construction Company ("APCC") commenced suit against Defendants Paul Sprenger ("Sprenger"), Jane Lang ("Lang"), and the Sprenger Lang Foundation (the "Foundation") (collectively, "Defendants"), asserting claims for breach of express and implied contract based upon Defendants' alleged failure to remit full payment for construction services provided by APCC.  Sprenger and Lang ("Counter-Plaintiffs"), in turn, assert a counterclaim for breach of implied contract based upon APCC's alleged failure to perform and complete those services in a timely and satisfactory manner.  Presently before the Court is APCC's [38] Combined Motion to Exclude Testimony/Discovery and for Partial Summary Judgment ("Motion to Exclude"), pursuant to which APCC seeks an order imposing sanctions upon Defendants/Counter-Plaintiffs based upon their alleged discovery-related failures.[1]  Based upon the parties' submissions, the attachments thereto, the relevant authorities,

---

[1] While APCC's motion is also styled as a motion for partial summary judgment, its arguments in that regard are predicated upon the assumption that certain categories of evidence

and the record as a whole,[2] the Court shall GRANT-IN-PART and DENY-IN-PART APCC's [38] Motion to Exclude, as set forth in greater detail below.

## I. BACKGROUND

APCC commenced this action on July 2, 2009, asserting claims against Defendants/Counter-Plaintiffs for breach of express and implied contract. *See* Compl., Docket No. [1]. From APCC's perspective, this action is a "straightforward collection case." Pl.'s Mem. at 3. APCC alleges that it was engaged by Defendants/Counter-Plaintiffs to provide general contracting services on an office building located at 1614 20th Street, N.W., Washington, D.C. 20009 (the "Property"). Compl. ¶ 9. APCC contends that, despite satisfactorily performing the agreed-upon work, Defendants/Counter-Plaintiffs have failed to make full payment. *Id.* ¶¶ 10-15. Through the instant action, APCC seeks monetary damages in the amount of $339,727.50, exclusive of interest, as recompense for services rendered. *Id.* ¶¶ 14, 18.

Defendants/Counter-Plaintiffs responded to the Complaint on July 27, 2009. *See* Answer of Def. the Sprenger Lang Foundation, Docket No. [7]; Answer of Defs. Jane Lang and Paul Sprenger ("Indiv. Defs.' Answer"), Docket No. [8]. In addition to responding to the allegations set forth in the Complaint, Counter-Plaintiffs asserted a single counterclaim for breach of implied

---

would be excluded in their entirety. Because the Court declines to exercise its discretion to impose the sanction of exclusion, summary judgment is not available on the grounds articulated.

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Pl.'s Mem. in Supp. of Combined Mot. to Exclude Test./Disc. and for Partial Summ. J. ("Pl.'s Mem."), Docket No. [38]; Defs.' Mem. in Opp'n to Pl.'s Mot. to Exclude Test./Disc. and for Partial Summ. J. ("Defs.' Opp'n"), Docket No. [43]; Defs.' Counter-Stmt. of Material Facts Not in Dispute, Docket No. [43]; Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. to Exclude Test./Disc. and for Partial Summ. J. ("Pl.'s Reply"), Docket No. [45].

contract based upon APCC's alleged failure to perform and complete the services for which it was engaged in a timely and satisfactory manner. Indiv. Defs.' Answer at 7-8. The Foundation did not assert a counterclaim of its own.

An Initial Scheduling Conference was held on September 16, 2009, at which time a discovery schedule was set. *See* Scheduling & Procedures Order, Docket No. [13]. Discovery was initially scheduled to close on March 24, 2010. *Id.* at 6. Upon APCC's motion, the discovery deadline was later extended to April 23, 2010. Min. Order (Mar. 18, 2010). Subsequently, discovery was further extended until May 7, 2010 for the limited purpose of completing Defendants/Counter-Plaintiffs' depositions. Mem. Order (Apr. 26, 2010), Docket No. [33], at 11. With that sole exception, discovery otherwise remained closed effective April 23, 2010. *Id.*

Following the close of discovery, Defendants/Counter-Plaintiffs filed motions for summary judgment. *See* Mot. for Summ. J. by the Sprenger Lang Foundation, Docket No. [36]; Mot. for Summ. J. by Jane Lang and Paul Sprenger, Docket No. [37]. Those motions have been resolved by the Court, *see Am. Property Constr. Co. v. Sprenger Lang Found.*, __ F. Supp. 2d __, 2011 WL 810092 (D.D.C. Mar. 9, 2011); *Am. Property Constr. Co. v. Sprenger Lang Found.*, __ F. Supp. 2d __, 2011 WL 791321 (D.D.C. Mar. 8, 2011), and the Court assumes familiarity with those opinions.

## II. LEGAL STANDARDS AND DISCUSSION

Through the present motion, APCC raises a series of complaints pertaining to Defendants/Counter-Plaintiffs' alleged discovery-related failures. The Court addresses each complaint in turn.

### A.     Defendants/Counter-Plaintiffs' Hybrid Fact/Expert Witnesses

Defendants/Counter-Plaintiffs have identified four individuals whom they propose to call to provide some form of expert testimony at the trial in this action, only three of whom are immediately relevant here—Eamon Seidel ("Seidel"), of Case Design/Remodeling, Inc.,[3] Shane Lilly ("Lilly"), of J&R Roofing, and Douglas Clark ("Clark") of Specialty Pool & Fountain, Inc.[4] Defs.' Expert Identification at 2-3. APCC contends that Seidel, Lilly, and Clark should all be precluded from testifying at trial due to Defendants/Counter-Plaintiffs' admitted failure to produce written expert reports for any of these witnesses. However, because these witnesses are not required to prepare expert reports, they cannot be precluded from testifying at trial on this basis. Nevertheless, because Defendants/Counter-Plaintiffs have represented that all three witnesses will be called in a particular capacity and their testimony offered for a limited purpose, their testimony at trial must not exceed the metes and bounds identified herein.

---

[3] There is some ambiguity as to whether Defendants/Counter-Plaintiffs intend to reserve their right to call, in lieu of Seidel, "another representative" of Case Design/Remodeling, Inc. at trial. *See* Defs.' Expert Identification, Docket No. [38-5], at 2. Irrespective of whether an expert report must be prepared, the Federal Rules of Civil Procedure require parties to "disclose . . . the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A) (2008). Because Defendants/Counter-Plaintiffs specifically identified only Seidel, they may not call any other representative of Case Design/Remodeling, Inc. to provide expert testimony at trial.

[4] Unlike Seidel, Lilly, and Clark, Defendants/Counter-Plaintiffs' fourth putative expert witness, Douglas A. Gardner, P.E., prepared an expert report. *See infra* Part II.B.

Under the Federal Rules of Civil Procedure, a written expert report is not required of all witnesses expected to provide expert testimony, but only those that are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B) (2008) (emphasis added).[5] The line between an expert retained to provide expert testimony and an expert retained for some other purpose, while perhaps clear in the abstract, is often muddled in practice. The issue most often arises where, as here, a party seeks to introduce the testimony of a so-called "hybrid fact/expert witness"—that is, someone whose testimony turns in part on scientific, technical, or other specialized knowledge, but who has a relationship to the subject matter of the action independent of the litigation itself. Frequent examples include treating physicians or health care professionals, but the universe is not so limited.

In evaluating whether an expert report is required, the district court must engage in a two-prong inquiry: it must first ask whether any of the contemplated testimony will be "expert" testimony (a shorthand for asking whether it falls within the ambit of Rules 702, 703, or 705 of the Federal Rules of Evidence), Fed. R. Civ. P. 26(a)(2)(A) (2008); the court must then proceed

---

[5] The Court recognizes that Rule 26 was amended effective December 1, 2010. As a general rule, amendments to the Federal Rules apply to pending cases only insofar as may be just and practicable. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.29 (1994) (endorsing, in dictum, "the commonsense notion that the applicability of [amended] provisions ordinarily depends on the posture of the particular case."). Because the amendment relevant in this case did not come into effect until long after the parties exchanged expert disclosures and, in fact, long after the parties finished briefing the present motion, the Court applies the pre-December 1, 2010 version of Rule 26 is assessing the sufficiency of Defendants/Counter-Plaintiffs' expert disclosures. However, the Court observes that the recent amendment, which defines with greater clarity the category of experts who are not required to prepare expert reports, is consistent with, and "reinforces," the interpretation reached in the instant case. *Downey v. Bob's Discount Furniture Holdings, Inc.*, __ F.3d __, 2011 WL 117263, at *5 n.4 (1st Cir. Jan. 14, 2011).

to ask whether the witness has been "retained or specially employed to provide expert testimony in the case" or whether his or her "duties as [a] party's employee regularly involve giving expert testimony," Fed. R. Civ. P. 26(a)(2)(B) (2008). Only if both questions are answered in the affirmative does the obligation to prepare an expert report arise. Therefore, the ultimate question of whether an expert report is required turns both on the character of the contemplated testimony, as well as the witness' relationship to the proponent.[6]

In the instant case, because Defendants/Counter-Plaintiffs concede that Seidel, Lilly, and Clark's testimony will include at least some expert testimony, the parties' arguments are directed exclusively towards the second prong—specifically, whether Seidel, Lilly, and Clark have been "retained or specially employed to provide expert testimony in [this] case." Fed. R. Civ. P. 26(a)(2)(B) (2008). Two of these three putative witnesses (Seidel and Lilly) are contractors who actually performed construction work at the Property and the third (Clark) is a contractor who inspected the premises and submitted a bid, but never actually performed any work at the Property. Defs.' Expert Identification at 2-3; Defs.' Opp'n at 9. According to Defendants/Counter-Plaintiffs' representations, Seidel, Lilly, and Clark will all testify as to the information they obtained, and the opinions they formed, while performing the tasks they were hired to do in their capacity as contractors. Provided their testimony is so confined, they do not

---

[6] APCC argues at some length that the answer to the question of whether a witness' relationship with the proponent arises pre- or post-litigation is outcome determinative, Pl.'s Reply at 4-7, but that argument is misplaced. While that may be one relevant consideration, the plain language of Rule 26 requires the Court to ask whether the witness has been "retained or specially employed *to provide expert testimony in the case*." Fed. R. Civ. P. 26(a)(2)(B) (2008). As illustrated by the instant case, a witness may be engaged by a party in a non-litigation capacity after an action has commenced, and still not be "retained or specially employed to provide expert testimony in the case." *Id.*

come to this action as "stranger[s]" or draw their opinions "from facts supplied by others, in preparation for trial." *Downey*, 2011 WL 117263, at *5; *see also St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05 Civ. 2115, 2007 WL 1589495, at *13 (D.D.C. June 1, 2007) (concluding that witness was not required to prepare expert report in connection with testimony about his role in ascertaining damages where it was a function of his ordinary employment), *aff'd*, 630 F.3d 217 (D.C. Cir. 2011). Indeed, courts have consistently reached the same conclusion in this context. *See, e.g.*, *Full Faith Church of Love W., Inc. v. Hoover Treated Wood Prods., Inc.* No. 01 Civ. 2597, 2003 WL 169015, at *2 (D. Kan. Jan. 23, 2003) (no expert report required where general contractors' testimony would be based on "facts which they learned during the course of their work as general contractors," including the scope of the problem and the purpose and reasonableness of repairs); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 07 Civ. 947, 2009 WL 1139575, at *4-5 (M.D. Fla. Apr. 27, 2009) (no expert report required of replacement contractor where testimony would be limited to information obtained and opinions formed in his role as a contractor); *Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.*, No. 07 Civ. 8446, 2009 WL 981724, at *6 (E.D. La. Apr. 9, 2009) ("hybrid fact-opinion testimony" as to factual observations and professional analyses rendered during renovation project admissible despite the lack of expert reports). In short, because Seidel, Lilly, and Clark were not "retained or specially employed to provide expert testimony in [this] case," Fed. R. Civ. P. 26(a)(2)(B) (2008), they are not required to prepare expert reports. This finding, however, is conditioned upon Defendants/Counter-Plaintiffs honoring their representation that Seidel, Lilly, and Clark's testimony will be limited to the information they obtained, and the opinions they formed, while performing the tasks they were

hired to do in their capacity as contractors. Any expert testimony exceeding those bounds will not be admitted.

While experts reports are not required of these witnesses, amendments to Rule 26 affecting these matters came into effect in the time since the parties exchanged their expert disclosures. Most notably, the amended Rule 26 includes a new subsection specifying the disclosures required in those situations, such as the present, where a witness is not specifically retained to provide expert testimony, but is nevertheless expected to provide such testimony at trial. Fed. R. Civ. P. 26(a)(2)(C) (2011). In such situations, the proponent must identify "the subject matter on which the witness is expected to present [expert] evidence," and (b) provide "a summary of the facts and opinions to which the witness is expected to testify." *Id.* Given the present posture of this case, most notably the fact that a pretrial conference is yet to be scheduled, the Court believes it is practicable and sensible to require Defendants/Counter-Plaintiffs to comply with these new requirements with respect to Seidel, Lilly, and Clark. Having these disclosures in hand will aid the parties in tailoring their efforts as they proceed along the path to trial and, in particular, in crafting any motions *in limine* directed to the testimony to be provided by these witnesses.[7]

---

[7] To the extent APCC intends at this time to challenge the proffered testimony of these witnesses on the grounds that such testimony may be vague, unsupported, or improperly stray into legal conclusions, its arguments are premature for at least three reasons. First, because an expert report is not required in this context, APCC's arguments are purely evidentiary and more appropriately raised in a motion *in limine* in advance of trial. Second, because the scope of the permissible testimony has been narrowed to the information obtained and opinions formed in the course of the witnesses' performance of their work, many of APCC's arguments are now moot. Third, because the Court shall require Defendants/Counter-Plaintiffs to provide written disclosures for Seidel, Lilly, and Clark in a form compliant with the recently amended Rule 26(a)(2)(C), it makes sense to await these disclosures so that the parties will be able to better tailor their arguments to the testimony actually expected to be presented at trial.

**B.      Defendants/Counter-Plaintiffs' Expert Report**

APCC next contends that Counter-Plaintiffs have not designated, and by the terms of this Court's prior orders cannot designate, an expert in support of their counterclaim.[8] Unfortunately, as has become a recurring theme in this action, the record relevant to the present motion is so poorly developed by the parties that the burden has effectively been shifted to this Court to sift through the pertinent materials in order to evaluate the merits of the parties' respective positions. In particular, APCC's argument that Counter-Plaintiffs are somehow barred from designating an expert is so vague and cursory that this Court is left to guess as to its precise foundation. *See* Pl.'s Mem. at 16; Pl.'s Reply at 9. Providing the parties' papers an exceedingly generous construction, the Court can surmise four possible bases for APCC's contention: first, that Counter-Plaintiffs failed to timely identify an expert witness in accordance with Rule 26(a)(2)(A); second, that Counter-Plaintiffs failed to timely produce a written expert report in accordance with Rule 26(a)(2)(B); third, that the report actually produced by Counter-Plaintiffs' expert is not substantively in compliance with the requirements of Rule 26(a)(2)(B); and fourth, that Counter-Plaintiffs' expert disclosures pertain only to their affirmative defense that they are entitled to a setoff and do not extend to Counter-Plaintiffs' counterclaim. In an exercise of its discretion, the Court shall address each of these bases on the merits in lieu of summarily denying APCC's requested relief based upon the deficiencies in the parties' briefing.

First, to the extent APCC intends to suggest that Defendants/Counter-Plaintiffs' identification of expert witnesses was untimely, the Court cannot agree. Rule 26 requires parties to identify any and all witnesses who may be called to provide expert testimony at trial,

---

[8] While APCC actually directs its argument towards all Defendants, only Sprenger and Lang assert a counterclaim in this action.

9

irrespective of whether they are required to prepare an expert report. Fed. R. Civ. P. 26(a)(2)(A) (2008). Because Defendants/Counter-Plaintiffs have indisputably disclosed the identities of their four putative expert witnesses, *see* Defs.' Expert Identification, the Court can only assume that APCC considers the disclosure to be untimely. However, Defendants/Counter-Plaintiffs' expert identification disclosure is undated, *see id.*, and neither party makes it clear when it was served upon APCC. To the extent the service date is buried somewhere in the record, it is not this Court's responsibility to hunt down the pertinent materials in support of the parties' respective arguments. Based on this record, the Court cannot conclude that the identification was untimely. In any event, to the extent APCC's motion rests on this basis, it has failed to specifically identify any prejudice emanating from the timing of Defendants/Counter-Plaintiffs' disclosure. *See* Fed. R. Civ. P. 37(c)(1) (2011) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified *or is harmless*.") (emphasis added). Accordingly, relief may not rest on this ground.

Second, to the extent APCC intends to suggest that Defendants/Counter-Plaintiffs failed to produce an expert report in a timely manner, its position arguably has some merit. In this case, Defendants/Counter-Plaintiffs produced a putative expert report prepared by Douglas A. Gardner ("Gardner"), P.E., of Gardner James Engineering, Inc., on or about February 1, 2010. *See* Report of Findings ("Gardner Report"), Docket No. [38-6]. The report was not produced when required. Following the Initial Scheduling Conference in this action, the Court set a schedule for the exchange of written expert reports for any witness for whom such a report is required under Rule 26(a)(2)(B). *See* Scheduling & Procedures Order at 6. Subsequently, upon the parties' joint

10

motion, the Court amended the schedule to provide as follows: the proponent's expert report was required to be served on or before January 11, 2010; the opponent's expert report was due to be served on or before February 1, 2010; and the proponent's rebuttal, if any, was due to be served on or before February 15, 2010. *See* Order (Dec. 11, 2009), Docket No. [19], at 1. On January 13, 2010, two days *after* opening expert reports were required to be exchanged by the Court's prior order, Defendants/Counter-Plaintiffs moved for an additional fourteen-day extension of time. *See* Defs.' Mot. for Extension of Time to Identify Expert, Docket No. [20]. However, when Defendants/Counter-Plaintiffs inexplicably failed to produce an expert report by their own unilaterally proposed deadline, the Court denied their request for an extension. Min. Order (Jan. 29, 2010). Defendants/Counter-Plaintiffs never sought reconsideration of the Court's decision. Instead, without prior notification to the Court, Defendants/Counter-Plaintiffs nevertheless served Gardner's report upon APCC on or about February 1, 2010. *See* Gardner's Report at 1. While Gardner's report arguably would have been timely if it was responding to an expert report prepared by one of APCC's experts, Defendants/Counter-Plaintiffs expressly state that Gardner's "report . . . is in now [sic] way based on any disclosure made by [APCC]." Defs.' Opp'n at 14. Accordingly, the Court's prior order required the report to be produced no later than January 11, 2010, *see* Order (Dec. 11, 2009), and because it was not, the report is untimely.

Defendants/Counter-Plaintiffs in actuality contest none of this, but instead argue that APCC has not shown that it suffered any prejudice arising from its tardy disclosure. Defs.' Opp'n at 14-15. While the Court does not take Defendants/Counter-Plaintiffs' backdoor circumvention of its scheduling orders lightly, it must agree that APCC has failed to point this Court to any prejudice arising from the delay. Indeed, while APCC discusses at some length the

alleged prejudice flowing from Defendants/Counter-Plaintiffs' allegedly belated document productions, *see* Pl.'s Mem. at 13-15; Pl.'s Reply at 8-9, it has failed to similarly identify any prejudice pertaining to the timing of the production of Gardner's expert report, *see* Pl.'s Mem. at 16; Pl.'s Reply at 10.  Meanwhile, APCC waited over four months to raise the issue with the Court, suggesting that it did not consider the prejudice, if any, to be great.  More importantly, discovery otherwise remained open at the time of production and Defendants/Counter-Plaintiffs represent, without contradiction, that APCC in fact took Gardner's deposition after his expert report was produced, Defs.' Opp'n at 16 & Ex. G, evidencing that APCC did not forego the opportunity to conduct relevant responsive discovery.  Even today, APCC concedes that Gardner is "at least a possible [] fact witness," Pl.'s Reply at 6, and in accordance with this Court's findings above, *see supra* Part II.A, would still be allowed to testify as to the information he obtained, and the opinions he formed, while performing the tasks he was hired to do in his capacity as a contractor.  In the absence of any specific showing of prejudice by APCC, these considerations lead ineluctably to the conclusion that the timing of the production of Gardner's report, while not "substantially justified," was nevertheless "harmless."  Fed. R. Civ. P. 37(c)(1) (2011).  Accordingly, relief cannot rest on this basis either.

Third, to the extent APCC intends to suggest that Gardner's report is not compliant with the substantive requirements of Rule 26(a)(2)(B), it has completely failed to support its arguments with specific references to the contents of Gardner's report or with citation to relevant legal authority.  Accordingly, relief cannot rest on this basis either.

Fourth, and finally, to the extent APCC intends to suggest that Defendants/Counter-Plaintiffs' expert disclosures pertain only to their setoff defense and do not extend to Counter-

Plaintiffs' counterclaim, the Court is not convinced. As an initial matter, Defendants/Counter-Plaintiffs' expert disclosures are not unambiguously limited to their setoff defense. *See generally* Defs.' Expert Identification; Gardner's Report. Regardless, the factual bases for Defendants' setoff defense and Counter-Plaintiffs' counterclaim are essentially coterminous. Under these circumstances, to endorse APCC's position that Counter-Plaintiffs should somehow be precluded from relying on expert testimony in support of their counterclaim when the relevant experts were identified as individuals who would provide essentially the same testimony on a related defense would unnecessarily elevate formalism above substance. The Court rejects the argument, and therefore relief cannot rest on this basis either.

In sum, APCC has failed to establish the circumstances that would justify striking Gardner's report or otherwise precluding him from testifying in support of Counter-Plaintiffs' counterclaim. Nevertheless, even though it appears that APCC has already engaged in responsive discovery in connection with Gardner's proffered opinions, given the indisputably belated production of Gardner's expert report and in order to ensure that APCC suffers no material prejudice thereby, APCC shall be afforded an opportunity to explain to the Court what additional discovery not already provided or addressed during Gardner's prior deposition, if any, it considers necessary to respond to Gardner's opinions.

### C.     *Defendants/Counter-Plaintiffs' Document Productions and Fact Witness Identification*

Discovery in this action closed on April 23, 2010. Min. Order (Mar. 18, 2010). One day prior to the close of discovery, Defendants/Counter-Plaintiffs produced approximately six-hundred pages of documents purportedly going to their "delay damages"—namely, their claims for lost rental income. Pl.'s Mem. Ex. B at 1. On May 7, 2010, two weeks after the close of

discovery, Defendants/Counter-Plaintiffs produced an additional round of documents.  *See* Pl.'s

Mem. Ex. C at 1.  Finally, on May 19, 2010, Defendants/Counter-Plaintiffs sent a letter to

APCC, identifying a single previously undisclosed fact witness, Christina Virzi Weaver

("Weaver"), of CB Richard Ellis Brokerage Services, who is expected to testify as to

Defendants/Counter-Plaintiffs' lost rental income.  Pl.'s Mem. Ex. D. at 1.  Through the present

motion, APCC contends that all three disclosures were untimely and that Defendants/Counter-

Plaintiffs should be precluded from introducing such documents or calling Weaver to testify at

trial.  Pl.'s Mem. at 15.  While it is clear that Defendants/Counter-Plaintiffs have failed to

exercise the sort of diligence this Court expects of litigants, it declines to impose the sanction of

exclusion under these circumstances.  As an initial matter, Defendants/Counter-Plaintiffs'

counsel assumes personal responsibility for the belated production, at least in part.[9]  Defs.' Opp'n

at 19 n.5.  While APCC speculates that the timing of the production was "an intentional effort to

prohibit any sort of responsive discovery," Pl.'s Mem. at 14, the Court accepts the representation

of Defendants/Counter-Plaintiffs' counsel, as an officer of the Court, that the delay in production

was due to an inadvertent oversight and that the documents were promptly produced upon

discovering the error, Defs.' Opp'n at 19 n.5.  In circumstances such as these, courts are reticent

to visit the failings of counsel upon the client.  *See Atkins v. Fischer*, 232 F.R.D. 116, 128

(D.D.C. 2005) ("[T]he sins of an attorney should not be visited upon an innocent client.").

Furthermore, while APCC alleges that the timing of Defendants/Counter-Plaintiffs' productions

prevented it from engaging in "thoughtful and prepared discovery," APCC fails to specify what

---

[9]  When Defendants/Counter-Plaintiffs' counsel avers that the "tardiness of the production" was due to his own oversight, it is not clear whether he is referring only to the April 22, 2010 production, or all three productions at issue.  *See* Defs.' Opp'n at 19 n.5.

additional discovery, if any, it might have sought had production hypothetically been made earlier in time. Pl.'s Mem. at 9. The lone exception to this generalized claim to prejudice is APCC's suggestion that it might have sought "depositions of and/or subpoenas to [] Weaver." *Id.* However, Defendants/Counter-Plaintiffs aver that the alleged prejudice "can be easily cured by permitting [APCC] to depose [] Weaver, if [APCC] believes such to be merited," Defs.' Opp'n at 20, which this Court takes as an expression of consent to such additional discovery. Given the posture of these proceedings, particularly the fact that the pretrial conference is yet to be scheduled, the Court declines to exercise its discretion to impose the sanction of exclusion based upon Defendants/Counter-Plaintiffs' admitted, but relatively brief, delays in producing responsive documents and information. Nevertheless, in light of the indisputably belated nature of Defendants/Counter-Plaintiffs' disclosures and in order to ensure that APCC suffers no material prejudice thereby, APCC shall be afforded an opportunity to explain to the Court what additional discovery, if any, it considers necessary in responding further. At a minimum, APCC may, at its election, take Weaver's deposition and, if it so chooses, Defendants/Counter-Plaintiffs' counsel (not Defendants/Counter-Plaintiffs) shall be required to pay the cost of securing the services of a court reporter for the deposition.

### D.   *Defendants/Counter-Plaintiffs' Itemization of Their Claimed Damages*

APCC also contends that Defendants/Counter-Plaintiffs have failed to provide a detailed and complete itemization of their claimed damages. The Court agrees. Defendants/Counter-Plaintiffs' obligation to provide such an itemization emanates from two sources. First, as part of their mandatory initial disclosures,[10] Defendants/Counter-Plaintiffs were required to produce "a

---

[10] Defendants/Counter-Plaintiffs' initial disclosures were due on September 22, 2009. Scheduling & Procedures Order at 6. Even assuming, *arguendo*, that Defendants/Counter-

computation of each category of damages claimed . . . [and to] make available . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). Second, independent of this pre-existing obligation, APCC specifically included with its interrogatories a request for "[a]n itemization of all damages suffered by you as alleged in any Counterclaim." Def. Jane Lang's Answers to Interrogs. ("Defs.' Interrog. Resps."), Docket No. [38-7], at 17.[11]

Despite being under a clear obligation to provide a "computation" and "itemization" of all their claimed damages, Defendants/Counter-Plaintiffs' only response was as follows:

> [A] complete itemization of damages will be provided when the investigation into the water problem is complete, and the bids for fixing the problems are received. Defendants have sought and obtained bids to complete and/or repair the work that Plaintiff failed to perform. At this time, [Defendants] claim damages for, inter alia, the cost of repairing and completing the work unsatisfactorily and/or incompletely performed by [APCC], the cost of engineering fees incurred to ascertain the scope of the water infiltration problems, the expenses resulting from delay in completion, including excess rent paid for interim office space, excess architectural supervision fees, and lost tenant rents, and we seek to recover amounts paid to [APCC] for supervision and overhead. * * * However, additional problems with [APCC's] work relative to the patio and associated gutters have materialized, and Defendants are still in the process of determining the extent and cause of the problems, as well as the necessary remedies.

---

Plaintiffs at that time required additional discovery or factual investigation to provide a complete calculation of their damages, a party "is not excused from making its disclosures because it has not fully completed its investigation of the case," and must instead "make its initial disclosures based on the information then reasonably available." LCvR 26.2(a).

[11] The interrogatory responses introduced into the record were verified by Lang. *See* Defs.' Interrog. Resps. at 18. In briefing the present motion, the parties have proceeded under the assumption that the interrogatories were directed to, and the responses provided by, all Defendants/Counter-Plaintiffs. In any event, it seems clear that Sprenger and the Foundation did not provide a more fulsome itemization of damages, and Defendants/Counter-Plaintiffs have never suggested otherwise.

Defs.' Interrog. Resps. at 17-18.  The response is patently inadequate; it consists of nothing more than a generalized, non-exhaustive list of categories of damages and excuses for failing to provide a complete response and, as such, does not amount to a "computation" or "itemization" at all.  *See Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 12 (D.D.C. 2006) (response that "specifics [as to damages] unknown at this moment" held "utterly deficient"); *Bregman v. District of Columbia*, 182 F.R.D. 352, 359 (D.D.C. 1998) (response that damages were identified in the complaint and that the party would supplement its response after consultation with an expert held insufficient).

In opposing the present motion, Defendants/Counter-Plaintiffs wisely do not attempt to justify the substance of their response; instead, their only defense is that APCC has otherwise "been provided with abundant documentary and testimonial information regarding Defendants' credits and set-offs."  Defs.' Opp'n at 13.  Defendants/Counter-Plaintiffs' argument is not well-taken.  By its plain language, "Rule 26(a) requires a party to provide a computation of any category of damages voluntarily, i.e. without awaiting a discovery request."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (internal quotation marks omitted).  The failure to do so is "especially troubling" where, as here, the proponent of disclosure has independently requested a calculation of damages through interrogatories.  *Id.*  Simply put, it is Defendants/Counter-Plaintiffs' burden to specifically identify, itemize, and document its claimed damages, and it cannot shift the burden to APCC to "weed through a stack of invoices without explanation or clarification to determine what exactly Defendant[s] are claiming in this matter."  Pl.'s Reply at 9.

While the deficiency is clear, the question remains as to the appropriate remedy.  APCC,

for its part, submits that Defendants/Counter-Plaintiffs should be precluded from presenting any evidence in support of their claimed damages. Pl.'s Mem. at 16; Pl.'s Reply at 9. While framed as an evidentiary sanction, APCC's request, if granted, would effectively prevent Defendants/Counter-Plaintiffs from securing any meaningful recovery on the only claim that they have asserted in this action, and is therefore akin to a request for dismissal of their counterclaim. Generally speaking, where the requested sanction is tantamount to dismissal, the district court should evaluate whether the "harshest sanction of dismissal" is warranted. *Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001). In ascertaining the appropriate sanction in this case, the Court bears this principle in mind.

To the extent APCC's motion rests on Defendants/Counter-Plaintiffs' failure to provide a more fulsome response to its interrogatory calling for an itemization of damages, the sanction of exclusion is not available. The operative provision is Rule 37(b), which provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A) (2011). In most cases, including this one, a prior court order requiring production is a necessary prerequisite to invoking the sanctions contemplated by Rule 37(b), including the sanction of exclusion.[12] *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995) (internal notations omitted). Because APCC never formally moved to compel a more fulsome response before now, no such order

---

[12] While a separate provision permits a district court to impose sanctions without a court order when a party "fails to serve its answers, objections, or written response" to properly served interrogatories, Fed. R. Civ. P. 37(d)(1)(A)(ii) (2011), that provision is triggered only when the party completely fails to respond, *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1339 (9th Cir. 1985), and is therefore inapplicable here. *See In re Miller*, No. 96 Br. 431, 2009 WL 4730755, at *5 (Bankr. D.D.C. Dec. 3, 2009) (sanctions under Rule 37(d) triggered where party "utterly fails" to respond).

exists in this case.[13]  Therefore, while the Court may compel Defendants/Counter-Plaintiffs to

provide a complete response, the sanction of exclusion cannot rest on this ground.  *See Grochal*

*v. Aeration Processes, Inc.*, 797 F.2d 1093, 1098-99 (D.C. Cir. 1986) (district court erred in

excluding evidence of damages based on incomplete itemization; the proponent of disclosure

never brought a motion to compel a more fulsome answer, and therefore the opponent was never

in clear violation of a court order), *vacated on other grounds*, 812 F.2d 745 (D.C. Cir. 1987) (per

curiam).

To the extent APCC's motion rests on Defendants/Counter-Plaintiffs' failure to provide

an adequate computation of damages as part of its initial disclosures pursuant to Rule 26(a), or

their failure to supplement their response pursuant to Rule 26(e), its arguments rest on firmer

ground.  In this context, the sanction of exclusion is automatic; "[i]f a party fails to provide

information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information .

. . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (2011).  However, in addition to or in lieu of

exclusion, the district court may impose any other sanction it deems appropriate in an exercise of

its discretion.  *Id.*  In opposing the present motion, Defendants/Counter-Plaintiffs offer no basis

for concluding that their failure to provide an adequate calculation of their claimed damages was

justified, let alone "substantially" justified.  Indeed, Defendants/Counter-Plaintiffs provide no

explanation at all, apart from the erroneous contention that they were somehow relieved of their

---

[13]  While APCC avers that it "presumed that the highlighted deficiencies would be
resolved" after they were brought to Defendants/Counter-Plaintiffs' attention, Pl.'s Mem. at 4
n.3, that did not alleviate APCC from its burden to file a proper motion to compel when its
concerns were not resolved amicably.

clear burden simply by producing the underlying documentation supporting their damages claims.  Defs.' Opp'n at 12.  At the same time, APCC fails to identify any specific prejudice emanating from Defendants/Counter-Plaintiffs' failure to provide a complete response, Pl.'s Mem. at 16; Pl.'s Reply at 9, and the Court finds that, coupled with the use of less onerous sanctions, the failure is harmless.

Specifically, the Court shall afford Defendants/Counter-Plaintiffs a *final* opportunity to produce a complete, detailed, and exhaustive itemization of all damages that they intend to pursue in this action.  That itemization may, for purposes of clarity, divide Defendants/Counter-Plaintiffs' claimed damages into one or more of the categories previously identified, but it must nevertheless identify with particularity all claimed damages, and correlate those damages with specific citations to any and all supporting materials.  The evidence relied upon by Defendants/Counter-Plaintiffs must be limited to documents already produced, or testimony already taken, during the course of discovery in this action.  Moreover, Defendants/Counter-Plaintiffs shall be limited to the categories of damages they have identified in their previous disclosures, namely—

- Expenses incurred in the course of completing or repairing the work performed by APCC;

- The cost of engineering fees incurred in ascertaining the scope of water filtration problems;

- Delay damages, including excess rent paid for interim office space, excess architectural fees, and lost rental income; and

- Amounts paid to APCC for supervision and overhead.

*See* Defs.' Interrog. Resps. at 17-18; Indiv. Defs.' Answer at 8.  If Defendants/Counter-Plaintiffs fail to itemize an element of its claimed damages in accordance with these strictures, they shall,

without further order of the Court, be precluded from seeking such damages at trial.

### E.     *Lang's Failure to Appear for Her Deposition*

As its final complaint, APCC contends that sanctions are warranted based upon Lang's admitted failure to appear at her noticed deposition.  On April 26, 2010, this Court found that Lang "willfully [chose] not to appear for [her] deposition[] as noticed, despite the Court's explicit order to the contrary."  Mem. Order (Apr. 26, 2010), Docket No. [33], at 1.  While concluding that Lang's behavior was borderline contumacious, the Court found that APCC's request for sanctions was premature, and held that request in abeyance.  *Id.* at 9.  APCC now renews its request.  Based upon its prior findings, which are incorporated herein, and Defendants/Counter-Plaintiffs' complete failure to come forward with any justification for Lang's conduct, the Court concludes that sanctions, albeit in a form more limited than proposed, are indeed appropriate.

Under Rule 37(d), district courts have the discretion to impose sanctions where "a party . . . fails, after being served with proper notice, to appear for that person's deposition," and, where appropriate, the Court may select from a range of sanctions including exclusion and dismissal.  Fed. R. Civ. P. 37(d)(1)(A)(i) & (d)(3) (2011).[14]  However, "[i]nstead of or in addition to these sanctions, the court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *Id.*  In opposition to the present motion,

---

[14]  Because Lang's conduct also violated an express court order, Rule 37(b) provides an alternative basis for the Court's ruling today.  *See* Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.").

Defendants/Counter-Plaintiffs dispute none of the facts that previously led this Court to hold that Lang failed to appear at her deposition "willfully and without good cause," Mem. Order (Apr. 26, 2010) at 10-11, and instead rejoin only that the delay in completing Lang's deposition was minimal, Defs.' Opp'n at 16. The rejoinder falls woefully short of establishing that the failure was substantially justified or that an award of expenses would otherwise be unjust. At the same time, the Court considers the two sanctions proposed by APCC—*i.e.*, dismissing Lang's counterclaim and prohibiting her from testifying in this action entirely, Pl.'s Reply at 11—to be excessive. Given that Lang's deposition ultimately proceeded on May 3, 2010, shortly after the Court's prior order, *see* Dep. of Jane Lang, Docket No. [38-1], the actual harm to APCC is confined to the expenses it incurred in securing a court order directing Lang to sit for her deposition. Accordingly, in an exercise of its discretion, the Court shall require Lang[15] to pay (a) the reasonable expenses, including attorneys' fees, incurred by APCC in responding to Defendants/Counter-Plaintiffs' [29] Emergency Motion for Protective Order and (b) the reasonable expenses (but not attorneys' fees) incurred in connection with Lang's deposition, including the cost of securing the services of a court reporter for purposes of the deposition. The parties are encouraged to promptly meet and confer to reach an agreement as to the amounts at issue; in the event they are unable to reach an agreement, the Court shall consider a petition for fees brought in advance of the pretrial conference. The briefing on any such petition shall be confined to the question of the proper amount to be awarded to APCC; the parties may not use the briefing as an opportunity to relitigate the merits of the cost-shifting issue more broadly.

---

[15] Because Lang was the offending party, the sanction does not extend to Sprenger or the Foundation.

### III. CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART APCC's [38] Motion for Discovery Sanctions. An appropriate Order accompanies this Memorandum Opinion.


Date:   March 14, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge